### In re ADOPTION OF CLINE.

[Cite as *In re Adoption of Cline* (1993), 89 Ohio App.3d 450.]

Court of Appeals of Ohio,
Trumbull County.

No. 92–T–4706.

Decided Aug. 9, 1993.

**452**

*Michael A. Partlow,* for appellant Kevin Lee Harris.

*Elise M. Burkey,* for appellee Ruth Day Cline.

---

FORD, Presiding Judge.

This appeal emanates from the Trumbull County Court of Common Pleas, Probate Division, where the trial court entered a final order of adoption in favor of appellee-petitioner, Patrick Cline. Appellant-natural father, Kevin Harris, timely appeals this judgment.

Ruth Cline, who is white, and appellant, who is black, had a child, Tiffany Nicole Day (n.k.a. Cline) on November 2, 1984. Appellant was determined to be Tiffany's father through a paternity action in 1987. Appellant was ordered to pay child support in the sum of $85 per month on March 9, 1987. Shortly thereafter, appellant remarried. Prior to their marriage, he and his wife had given birth to a son and a daughter. Appellant was divorced in February 1988, and ordered to pay child support for the two children. Appellee, Patrick Cline, and Tiffany's natural mother, Ruth Cline, were married on January 27, 1989. Appellee filed his petition for adoption of Tiffany on April 16, 1990.

Appellant admitted to paying the sum of only $65 for the support of Tiffany during the year prior to the filing of the adoption petition. Appellant also testified concerning his economic situation. He had worked as an apprentice electrician for a period of six years at Local 573, where he had recently become a journeyman. The record shows that he earned $22,000 in 1989, and $18,417.23 in 1988. In March 1989, appellant filed a Chapter 13 bankruptcy petition, which was dismissed in February 1990. He then filed a Chapter 7 petition in May 1990 and had his debts discharged. Appellant incurred significant legal fees during this time. He was also incurring legal fees in attempting to enforce his visitation rights and avoid adoption petitions for the two children from his previous marriage.

An initial hearing was conducted on August 7, 1990, but was recessed in order for appellant to obtain counsel. A subsequent hearing was held on January 9,

1991 concerning whether appellant's consent was necessary to the adoption. In a May 1, 1991 judgment entry, the trial court determined that appellant's consent was not necessary based on the fact that he had sufficient income to make more than the token $65 payment toward the support of Tiffany. The trial court referred to his 1988 and 1989 income levels, and the fact that he had paid $2,800, a considerable sum, for the support of his other two children. Appellant then appealed this decision to this court in case No. 91–T–4558. However, on August 5, 1991, appellant requested dismissal of the appeal, which was granted on August 13, 1991.

On October 21, 1991, the trial court conducted an evidentiary hearing concerning whether the adoption was in the best interest of Tiffany. On that same date, the court entered an interlocutory order tentatively granting the adoption subject to further investigation by the Trumbull County Children's Services Board ("CSB") after a period of six months. A final hearing was conducted in this matter on April 24, 1992. In a judgment entry dated April 28, 1992, the trial court entered the final order granting the adoption from which appellant now appeals, setting forth the following assignments of error:

"1. The trial court's findings that the appellee had shown, by clear and convincing evidence, both that: 1) the appellant had failed to support his minor child for the requisite one-year; and 2) that this failure was without justifiable cause were against manifest way [*sic*] of the evidence and contrary to the provisions contained in R.C. 3107.07.

"2. The trial court abused its discretion and committed reversible error, all to the prejudice of the appellant, by failing to afford the appellant a reasonable opportunity to present evidence at the final hearing of this matter concerning the issue of whether or not the proposed adoption was in the best interest of the child.

"3. The trial court's findings that the adoption of the appellant's daughter by her step-father was in the best interests of the child was against the manifest weight of the evidence."

Under his first assignment of error, appellant alleges that the trial court erred in determining that his consent to petitioner's adoption of Tiffany was not necessary. Despite his admission that he paid only $65 toward Tiffany's support for the year prior to the petition, he maintains that he did not fail to support her during that time. Specifically, he claims to have proven that he had "justifiable cause" for his failure to provide the court-ordered support.

In a situation, as here, where the natural father refuses to consent to the adoption of his child by a third party, a bifurcated procedure is followed. First, a hearing on the issue of the necessity of consent is held. In the second stage, the

court determines whether the adoption is in the best interest of the child after a home study investigation. See R.C. 3107.12.

R.C. 3107.07(A) provides that consent to adoption is not required of any of the following:

"A parent of a minor, when it is alleged in the adoption petition and the court finds after proper service of notice and hearing, that the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner."

As we have noted in previous decisions, the foregoing provision imposes a dual responsibility upon the "non-petitioning" parent to both communicate with the minor child, and to provide maintenance and support. See, e.g., *In re Adoption of Ricketts* (Feb. 8, 1991), Trumbull App. No. 90–T–4408, unreported, at 5, 1991 WL 16693; *In re Adoption of Rantamaki* (Mar. 30, 1990), Ashtabula App. No. 88–A–1422, unreported, 1990 WL 36564. Moreover, the failure to satisfy *either* prong of the provision, without justifiable cause, "abrogates the necessity for consent." *Id.* at 4.

However, because these cases may involve the termination of fundamental parental rights, the burden of proof is on the petitioner to establish by clear and convincing evidence that the natural parent failed to support, without justifiable cause, his or her minor child during the one-year period prior to the adoption petition. *In re Adoption of Masa* (1986), 23 Ohio St.3d 163, 23 OBR 330, 492 N.E.2d 140. Then, once the petitioner has established a failure in either of these areas, "the burden of going forward with the evidence is on the natural parent to show some facially justifiable cause for such failure." *In re Adoption of Bovett* (1987), 33 Ohio St.3d 102, 104, 515 N.E.2d 919, 922.

Appellant argues that the trial court's judgment was against the manifest weight of the evidence with respect to the second prong, maintenance and support. The trial court's entry regarding the consent issue did not address the "failure to communicate" prong. Neither did appellant raise this issue in his argumentation on appeal. He did not assign as error, or direct us to specific portions of the record where the lower court failed to find that appellant had in fact communicated with Tiffany, or had justifiable cause for not doing so. See App.R. 16(A)(3) and (D); Loc.R. X(C)(3)(a). Therefore, we must presume the regularity of the lower court's proceeding and judgment regarding this issue. *Volodkevich v. Volodkevich* (1989), 48 Ohio App.3d 313, 549 N.E.2d 1237. Accordingly, as appellant correctly stated in his brief, the "failure to communicate" prong is not before us. The determination of whether justifiable cause for failure

to pay child support has been proven by clear and convincing evidence can be disturbed on appeal only if such determination is against the manifest weight of the evidence. *Masa, supra,* at paragraph two of the syllabus. Hence, a judgment will not be overturned if supported by some competent and credible evidence.

■ Before addressing the merits of appellant's assignments, we must dispense with a procedural issue presented in this case. Appellee argues that appellant's dismissal of his appeal on the consent ruling constitutes a waiver of that issue for purposes of this appeal based on the doctrine of *res judicata.*

We recognize that a substantial number of other appellate courts have previously determined that the special nature of a judgment regarding the consent of the natural parent renders it susceptible to definition as a "final order" affecting a substantial right under R.C. 2505.02. *In re Adoption of Jorgensen* (1986), 33 Ohio App.3d 207, 208–209, 515 N.E.2d 622, 623–625. See, also, *In re Adoption of Hupp* (1982) 9 Ohio App.3d 128, 9 OBR 192, 458 N.E.2d 878, fn. 1; *Sprunk v. Sprunk* (Jan. 27, 1989), Lucas App. No. L–88–087, unreported, at 3, 1989 WL 5416; *In the Matter of Payne* (Mar. 23, 1988), Ross App. No. 1414, 1988 WL 35797; *In re Adoption of Bing* (Feb. 26, 1991), Gallia App. No. 90CA1, unreported, 1991 WL 28328. This would certainly mean that failure to appeal within thirty days will cause the order to become *res judicata* and not reviewable in a subsequent appeal taken from the final adoption order. However, we are inclined to disagree.

Until the hearing on the merits of the adoption petition and the best interest of the minor child has been determined, the natural parent retains parental rights and responsibilities. Further, the natural parent also retains an overriding interest in testifying on the issue of whether the proposed adoption is in the best interest of the child. Even though the natural parent could not bar an adoption by withholding consent, he or she could offer relevant evidence that the pending adoption would not be in his or her child's best interest. See *Jorgensen,* 33 Ohio App.3d at 209–210, 515 N.E.2d at 624–625.

Therefore, a court's determination that the natural parent's consent is not required does not necessarily prevent a judgment in the natural parent's favor because the final decree of adoption may not ultimately issue. Accordingly, we are of the view that the consent entry was not a final appealable order, and that appellant's dismissal of the former appeal is not *res judicata* regarding consent.

■ Having established that the consent issue is properly before us, we will now proceed to the merits of appellant's first assignment of error.

Given appellant's position as Tiffany's natural father, "[he] was under a moral and legal obligation to help financially with his progeny." *Rantamaki, supra,* at

7. Thus, support of one's children should rank among the highest of priorities. Appellant's characterization of the circumstances preventing him from supporting Tiffany is not a comprehensive analysis of the facts. Appellant was experiencing understandable financial hardship, as evidenced by the bankruptcy proceedings. However, it is clear from the fairly significant support paid toward his other children ($2,800) and the fact that he was able to pay attorney fees in the amount of $6,000 for both the divorce and bankruptcy proceedings that he had *some* discretionary income which he could have divided among his three children and contributed toward the support of Tiffany.

In another fairly recent case from this district, *In re Adoption of Hale* (July 22, 1988), Lake App. No. 12–238, unreported, 1988 WL 76765, the natural father was ordered to pay $225 monthly in child support but paid only $50 for the entire year prior to the adoption petition. We said that the $50 support payment, though minimal, was sufficient to require that the natural father's consent be given. *Id.* at 7.

The facts in *Hale,* however, differ significantly from the scenario in the instant case. In *Hale,* the petitioner apparently did not meet his initial burden of proof in demonstrating that the natural father was without justifiable cause in failing to pay child support. Accordingly, without a showing by petitioner of "no justifiable cause," the natural father was not required to actively go forward with rebuttal evidence demonstrating justifiable cause.

On the other hand, in the case at bar petitioner put forth competent, credible evidence in the form of income tax forms, support payments to other children, payment of attorney fees, etc., to demonstrate the absence of justifiable cause. Yet, appellant did not successfully rebut any of this evidence.

Accordingly, we would affirm the judgment of the trial court and conclude that there was sufficient, competent credible evidence for the court below to find, by clear and convincing evidence, that the requirements of R.C. 3107.07(A) were met, and that appellant was without "justifiable cause" for his failure to support Tiffany during the one-year period prior to the adoption petition. Thus, we cannot conclude that the trial court's findings are against the manifest weight of the evidence.

■ Under appellant's second assignment of error, he alleges that the trial court abused its discretion by failing to afford him, as a nonconsenting parent, a reasonable opportunity to present evidence concerning Tiffany's best interest at the final hearing when it is allegedly uncontroverted that he did not receive notice of the hearing by mail until April 24, 1992, the actual day of the hearing.

As of 10:30 a.m. on April 24, 1992, neither appellant nor his counsel, a Ms. Yakubek, had appeared for the hearing, which was scheduled for 10:00 a.m.

Consequently, since the judge and opposing counsel were prepared to go forward, the hearing began. The court repeatedly called Yakubek's office and the local municipal court in an effort to locate her. Yakubek arrived at 10:55 a.m. and was given the opportunity to prepare and deliver a cross-examination of Annette Weimer, the TCSB worker who conducted the home study and filed the original and supplemental report. Yakubek claimed to have had two witnesses whose testimony she wanted to present, but whom she did not have the opportunity to subpoena due to this alleged lack of notice.

The record also reflects the following sequence of events leading up to the hearing: On April 10, 1992, the TCSB filed the supplemental report on its investigation. The interlocutory order of adoption was to become a final decree on April 21, 1992. On April 17, 1992, the court entered an order extending the interlocutory period until April 24, 1992, and also ordered that a hearing on the supplemental report take place on April 24, 1992, at 10:00 a.m. The record clearly reflects that written notice of this order was sent to all counsel and TCSB. Appellant does not claim that he did not receive this notice.

On April 20, 1992, Yakubek filed a motion for a new hearing based on this "new" testimony appellant wished to present. A recitation of the facts and procedural history of this case was read into the record by the trial judge at the commencement of the April 24, 1992 hearing. According to this statement, Yakubek had called the court shortly before April 20, 1992, and spoken to one of the probate staff members who informed her that the hearing had already been scheduled for April 24, 1992 at 10:00 a.m. as originally noted in the court's April 17, 1992 entry, which she received. On April 21, 1992, pursuant to appellant's motion for a new hearing, the court again mailed notices of the previously scheduled April 24, 1992 hearing to all counsel. Yakubek claims not to have received it until the actual day of the hearing. However, the court secretary testified that she knew a copy had also been placed in Yakubek's mailbox at the court. Yakubek stated that she does not check the box daily.

Based on the foregoing sequence of events, it is uncontroverted that notice of the hearing was sent and received by counsel for appellant on at least two, if not three, separate occasions. Appellant received actual notice of the hearing via the court's April 17, 1992 and April 21, 1992 entries, as well as by way of a telephone conversation with a court staff member. Consequently, appellant's allegations that the court did no more than technically comply with the notice requirements appear to be without substance.

Further, appellant had a six-month period in which to communicate with CSB about any other evidence or witnesses he wished to have them pursue. However, appellant did not notify CSB and the court of this evidence until April 20, 1992. Finally, appellant did not proffer the testimony of these two witnesses into the record when asked by the court if she had anything more to say. Therefore,

based on the foregoing, appellant may not now complain that she was not afforded reasonable opportunity to present evidence at the final hearing.

■ Under appellant's third assignment of error, he argues that the court's finding that the adoption of Tiffany by appellee was against the manifest weight of the evidence. We disagree.

■ At both hearings, CSB favored that the adoption take place. The court relied heavily on this recommendation in making its decision. The law is clear that a court does not abuse its discretion in placing great weight on the recommendation of the Children's Services Board that the adoption should proceed. *In re Adoption of Labo* (1988), 47 Ohio App.3d 57, 61–62, 546 N.E.2d 1384, 1387–1389. Also, the testimony of Barb Cline, appellee's mother, and Sally Day, Tiffany's maternal grandmother, indicated that Tiffany considers appellee to be her father and calls him "dad," that he spends time playing with her and taking her various places, and provides a healthy, stable home for Tiffany.

Our review of the record leads us to conclude, once again, that there was sufficient competent credible evidence, for the court to find by clear and convincing evidence, that the adoption was in Tiffany's best interest. Accordingly, appellant's third assignment of error is not well taken.

Based on the foregoing, the judgment of the trial court is affirmed.

*Judgment affirmed.*

BROGAN and WOLFF, JJ., concur.

JAMES A. BROGAN and WILLIAM H. WOLFF, JR., JJ., of the Second Appellate District, sitting by assignment.