OPINION
{¶ 1} Ronald Lee and Teri Lynn Geis, Appellants, appeal from the Harrison County Court of Common Pleas, Probate Division, Judgment Entry denying their petition to adopt Emily Marie Geis. Teri is Emily's maternal grandmother and Ronald is Emily's step-grandfather.
 {¶ 2} Appellants filed their adoption petition on February 17, 2004. They asserted that they did not need Emily's natural parents' consent to the adoption because neither communicated with Emily in the one year preceding the filing of their adoption petition.
 {¶ 3} Following a hearing, the trial court concluded that Emily's natural mother's consent was not needed. However, it concluded that her natural father's consent was necessary for the adoption. The trial court found that Appellants failed to meet their burden of proof establishing that Emily's natural father's failure to communicate and failure to provide support were without justifiable cause. (Dec. 23, 2004, Judgment Entry, pp. 4, 8-9.) Thus, the trial court dismissed the adoption petition. For the following reasons, we agree with the trial court.
 {¶ 4} Pursuant to App.R. 11.2(C), this timely appeal is expedited. Appellants assert two assignments of error on appeal:
 {¶ 5} "THE TRIAL COURT ERRED IN FINDING THAT THE CHILD WAS HIDDEN DURING THE ONE YEAR IMMEDIATELY PRECEEDING [sic] THE FILING OF THE PETITION FOR ADOPTION. SUCH FINDING WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 6} "THE TRIAL COURT ERRED IN FINDING THAT THE ALLEGED `HIDING' CONSTITUTED JUSTIFIABLE CAUSE FOR APPELLEE'S FAILURE TO COMMUNICATE WITH OR SUPPORT THE MINOR CHILD DURING THE ONE YEAR IMMEDIATELY PRECEEDING [sic] THE FILING OF THE PETTITION [sic] FOR ADOPTION. SUCH FINDING WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 {¶ 7} Since both assignments of error concern the weight of the evidence supporting the trial court's findings, they are addressed together herein. We note that while the assignments mention the sufficiency of the evidence before the trial court, the entire thrust of the argument is directed towards the weight, not sufficiency of the evidence presented. Therefore, we will address this matter accordingly.
 {¶ 8} It should be initially stressed that a natural parent's right to the care and custody of his or her children is one of the most precious and fundamental in the law. Santosky v. Kramer (1982), 455 U.S. 745, 753,102 S.Ct. 1388, 71 L.Ed.2d 599; In re Adoption of Masa (1986),23 Ohio St.3d 163, 165, 492 N.E.2d 140. Since adoption terminates those rights, "`* * * [a]ny exception to the requirement of parental consent [to adoption] must be strictly construed so as to protect the right of natural parents to raise and nurture their children.'" Id. quoting, In reSchoeppner (1976), 46 Ohio St.2d 21, 24, 345 N.E.2d 608.
 {¶ 9} The termination of parental rights has been described as the family law equivalent of the death penalty. In re Hayes (1997),79 Ohio St.3d 46, 48, 679 N.E.2d 680, quoting In re Smith (1991),77 Ohio App.3d 1, 16, 601 N.E.2d 45 (discussing the state's termination of parental rights). Further, when a court is determining whether to permanently terminate parental rights, it must grant the affected parent, "every procedural and substantive protection the law allows." In re Smith, supra.
 {¶ 10} With these principles in mind, R.C. § 3107.07(A) provides that a natural parent's consent to an adoption is not required where that parent has failed, without justifiable cause, to communicate with the child or to provide for the maintenance and support of the child for a period of at least one year prior to the filing of the adoption petition.
 {¶ 11} The petitioners have the burden of proving, by clear and convincing evidence, that the natural parents have failed to support the child or failed to communicate with the child for one year immediately preceding the filing of the adoption petition. R.C. § 3107.07(A). Clear and convincing evidence is evidence that will produce a firm belief in the mind of the trier of fact as to the facts to be established. Crossv. Ledford (1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus. The failure to satisfy either prong without justifiable cause, "`abrogates the necessity for consent.'" In re Adoption of Cline
(1993), 89 Ohio App.3d 450, 454, 624 N.E.2d 1083, quoting In reAdoption of Rantamaki (Mar. 30, 1990), 11th Dist. No. 88A-1422, 4.
 {¶ 12} Once the petitioners meet this burden, then the burden shifts to the natural parents to show some facially justifiable cause for their failure. Justifiable cause for the failure to communicate has been defined as "significant interference" with communication, or "significant discouragement" of communication between parent and child. The probate court is the finder of fact as to whether or not justifiable cause exists. In re Adoption of Holcomb, (1985), 18 Ohio St.3d 361, 367-368,481 N.E.2d 613.
 {¶ 13} However, once the natural parents present evidence to show justifiable cause, the petitioners must prove by clear and convincing evidence that the failure to communicate or support was without justifiable cause. The burden of proof remains with the petitioners. Inre Adoption of Bovett (1987), 33 Ohio St.3d 102, 515 N.E.2d 919, syllabus; Dallas v. Dotson (1996), 113 Ohio App.3d 484, 487,681 N.E.2d 464, appeal not allowed 77 Ohio St.3d 1515, 674 N.E.2d 370.
 {¶ 14} On appeal, the trial court's ruling as to whether the natural parents had or lacked justifiable cause will not be reversed unless it is against the manifest weight of the evidence, i.e., if it is not supported by some competent credible evidence. Cline, supra; Bovett, supra; In reAdoption of McNutt (1999), 134 Ohio App.3d 822, 828-829,732 N.E.2d 470.
 {¶ 15} In addition, the trial court, as the trier of fact, is in a better position than the appellate court to view the witnesses and to use its observations in weighing the credibility of the testimony. Myers v.Garson (1993), 66 Ohio St.3d 610, 615, 614 N.E.2d 742. Consequently, an appellate court must defer to the trial court on issues of weight and credibility of the witnesses.
 {¶ 16} Thus, this Court must review the evidence before the trial court in its entirety and assess whether the trial court's decision was against the manifest weight of the evidence. Whether or not Emily's natural father supported or communicated with her for the one-year period is not in issue. Instead, this Court must assess whether Appellants proved with clear and convincing evidence that Emily's natural father's failure to communicate with her or provide support from February 17, 2003 to February 17, 2004 lacked justifiable cause.
 {¶ 17} The hearing transcript reveals the following:
 {¶ 18} Emily Marie Bookless-Dudley was born in Albuquerque New Mexico on February 4, 1998. Her natural parents are Nathan Dudley ("Nathan") and Sarah Chantal Bookless ("Chantal"). They were never married. Appellant, Teri Lynn Geis, is Chantal's mother and Emily's maternal grandmother. Chantal and Emily resided with Teri after Emily was just a few weeks old. Nathan initially visited with Emily approximately every three to four weeks. He also resided with them for three months in 1998-1999. (Tr., pp. 31-32, 39, 42.)
 {¶ 19} Since June of 1999, Emily has resided with Terri without Chantal or Nathan. With Chantal's consent, Terri was appointed Emily's legal guardian in June of 1999 by a New Mexico court. Nathan was not involved in that proceeding. (Tr., p. 47.) Thereafter, and with the court's permission, Terri, Chantal, and Emily relocated to Oregon. Teri lived with Emily in Oregon for two years. Chantal also lived in Oregon, but she resided in a separate dwelling. (Tr., pp. 112, 115-116.)
 {¶ 20} Thereafter, Teri met Ronald Geis via the internet while she was residing in Oregon. She subsequently lost her job in Oregon and decided to relocate to Ohio to be with Ronald. She and Emily moved to Freeport, Ohio in February of 2002. (Tr., pp. 79, 87.)
 {¶ 21} Teri spoke with Nathan on the telephone prior to their move to Ohio. The evidence is conflicting as to whether Teri advised Nathan how to get in contact with her in Ohio. It is undisputed that Teri did not directly give Nathan her new Ohio address or phone number and that Teri had Nathan's contact information prior to her relocation. (Tr., p. 66.) She testified that she did not think it was her responsibility to keep track of Nathan. (Tr., p. 88.)
 {¶ 22} Teri testified that she was always available to be contacted and that she never refused Nathan access to Emily. Teri indicated that Nathan had at least three indirect methods of locating Emily in Ohio. First, Teri provided her new telephone number and address to her daughter Chantal. Second, Teri said she advised Nathan in a telephone conversation that he could get her new number and address from her Oregon attorney. Finally, she told Nathan that he could obtain her new contact information from her ex-husband, who still lived at her previous residence in New Mexico. (Tr., pp. 177, 180.)
 {¶ 23} Teri is unsure if she ever advised her New Mexico attorney of her forwarding address and telephone number in Ohio pursuant to the New Mexico court order. The order required Teri to keep her New Mexico attorney apprised of her current address and telephone number. The New Mexico court order explicitly authorized Teri, Chantal, and Emily to relocate to Oregon until further court order; Teri never obtained an additional court order authorizing her move to Ohio. (Tr., pp. 1121-15, 117, 153; Defendant's Exh. B.)
 {¶ 24} According to Teri, she tried to contact Nathan's military base in Washington State several times after she moved to Ohio. She introduced two phone bills reflecting several calls to Tacoma, Washington. Teri denies doing anything that involved hiding Emily or that prevented Nathan from communicating with her. (Tr., pp. 166, 169, 187-188.)
 {¶ 25} Nathan's wife, Natalie Dobson, testified in his behalf. She stated that Nathan did not have Teri's contact information once she moved to Ohio. Natalie testified that Nathan wanted to find Emily. During one of his deployments, Natalie unsuccessfully tried to locate Teri through the use of several internet searches. Natalie knew Teri's social security number and she knew she was relocating to Ohio and likely to remarry. (Tr., pp. 201-203.)
 {¶ 26} Nathan testified that he was a United States Army Airborne Ranger based in Fort Lewis, Washington since 2001. Nathan testified that he repeatedly tried to contact Teri in Oregon, but that his telephone calls were never answered. One call he placed was finally answered in 2001; he was using a friend's cellular telephone. He was not permitted to speak with Emily. Instead, Teri advised Nathan that he could only correspond with Emily by use of the mail and then as "Nathan," and not as her father. After a few years, Nathan was told she would allow him to be introduced as Emily's father. Nathan did not agree with Teri's proposal. (Tr., pp. 235-236, 238-239.)
 {¶ 27} During this telephone call, Teri advised Nathan of her decision to relocate to Ohio. Nathan disputed Teri's testimony that she gave him her attorney's name and number so that he could obtain her Ohio contact information. He also denied that Teri ever told him her new husband's name or the name of the Ohio town to which she was moving. (Tr., p. 233.)
 {¶ 28} Notwithstanding, Nathan eventually obtained Teri's Ohio contact information from Teri's former stepdaughter who still resided in New Mexico. Nathan testified he got this information after Teri's ex-husband refused to give him her new address or telephone number. (Tr., pp. 217, 247.) Nathan was forced to leave the country three days after he secured their Ohio contact information. He did not try to make contact during those three days because he was afraid they would flee. (Tr., pp. 243-244.)
 {¶ 29} Nathan called Teri in December of 2003 at her Ohio residence. During their conversation, Teri again wanted him to only communicate with Emily via the mail. She also asked him to consent to the adoption. (Tr., pp. 254-255.)
 {¶ 30} Nathan denies that Teri ever contacted him after her move to Ohio. In fact, he reviewed Terri's telephone bills and said that the Tacoma phone numbers listed on her bill were not affiliated with his military base. Only one two-minute call was reflected as being made to his base, and he denied ever receiving a call or message from Teri. (Tr., pp. 259-261.)
 {¶ 31} In addition, Nathan was deployed for eight months of the one-year period before February 17, 2004. He had one two-week leave during that one-year period. (Tr., p. 242.)
 {¶ 32} In rendering its decision against Appellants, the trial court specifically concluded that although Nathan failed to communicate or provide support within the applicable one year, Appellants did not establish that his failures were without justifiable cause.
 {¶ 33} Notwithstanding the parties' conflicting testimony on several issues, the trial court concluded that all of the credible evidence confirmed that Teri never gave Nathan her contact information in Ohio. Further, once Nathan contacted Teri's ex-husband in New Mexico, he refused to assist Nathan in locating Emily. Thereafter, Nathan eventually received Teri's information from her prior stepdaughter. (Dec. 23, 2004, Judgment Entry, pp. 6-7.)
 {¶ 34} In addition, Teri had Nathan's contact information prior to her relocation to Ohio, but her few alleged attempts to contact Nathan were unsuccessful.
 {¶ 35} The trial court found Nathan to be a credible witness. It also concluded that Teri's testimony was inconsistent on several issues and less than credible based on her repeated, "self-serving, assailing, and irrelevant statements regarding Mr. Dudley and Ms. Bookless," throughout her testimony. The court believed that her behavior was based on her desire to protect Emily and to prevent sharing her with her natural parents. (Dec. 23, 2004, Judgment Entry, p. 8.)
 {¶ 36} The trial court also indicated its concern with the number of times Teri has relocated the minor child, noting that by the age of six, Emily has resided in four different states. In fact, Appellants relocated with Emily to Minnesota while this adoption petition was pending in Ohio.
 {¶ 37} The trial court judge specifically held, "[t]he natural father's consent to this adoption is required * * * as said failures were justifiable as the minor child's guardian relocated without providing contact information to the natural father, thus hiding her for over two years." (Dec. 23, 2004, Judgment Entry, p. 9.)
 {¶ 38} Appellants assert that the cases relied on by the trial court are distinguishable from the instant cause. Specifically, Appellants claim that the facts in In re Adoption of Holcomb (1985),18 Ohio St.3d 361, 367-368, 481 N.E.2d 613 and In re Adoption ofStoltenberg (March 14, 1984), 7th Dist. No. 83CA61, reflect that the parties in those cases were actively interfering with the noncustodial parent's attempts to communicate. These active interferences included relocating the child without providing a forwarding address and thereafter having unlisted telephone numbers, and returning cards and gifts directed to the children. Id at 2; Holcomb at 362.
 {¶ 39} Appellants also argue that the noncustodial parents in Holcomb
and Stoltenberg, supra, had no means of finding their children whereas Nathan in the instant matter could have easily contacted Teri's ex-husband to locate her. However, the evidence in this case reveals that Teri's ex-husband failed to assist Nathan upon his request. In addition, although Teri may have told Nathan she was moving to Ohio, she never provided him with her new contact information. Finally, Teri had Nathan's contact information the entire time.
 {¶ 40} While the "hiding" in the instant case may not be as egregious as the facts depicted in Holcomb, supra, the facts herein support the trial court's decision that Appellants did not establish by clear and convincing evidence that Nathan's failure to communicate with or support Emily lacked justifiable cause.
 {¶ 41} In strictly construing the law before this Court in the natural father's favor, and keeping in mind Nathan's fundamental right to participate in the care of his child, this Court cannot conclude that the trial court's decision was against the manifest weight of the evidence. The probate court, as the trier of fact, is entitled to deference in addressing the credibility of the testimony. Myers v. Garson (1993),66 Ohio St.3d 610, 615, 614 N.E.2d 742.
 {¶ 42} Because the trial court's decision is supported by competent, credible evidence, this Court hereby affirms the decision in full.
Donofrio, P.J., concurs.
Vukovich, J., concurs.