[Cite as *In re J.F.R-W*, 2017-Ohio-1265.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF J.F.R-W. | ) ) ) ) ) ) ) ) ) ) | CASE NO. 16 BE 0045<br><br>OPINION |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Civil Appeal from Court of Common Pleas, Probate Division of Belmont County, Ohio<br>Case No. 16 BE 0045 |
| JUDGMENT: | Affirmed |

APPEARANCES:

| | |
|---|---|
| For Appellant | Attorney Sandra Nicholoff<br>100 West Main Street<br>Suite 206<br>St. Clairsville, Ohio 43950 |
| For Appellee | Attorney Grace Hoffman<br>3800 Jefferson Street<br>P.O. Box 50<br>Bellaire, Ohio 43906 |

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Carol Ann Robb

Dated: March 30, 2017

DONOFRIO, J.

{¶1} Respondent-appellant, Paul B., appeals from the Belmont County Probate Court judgment granting the adoption of J.F.R-W to petitioner-appellee, Heath W., who is the husband to the child's mother, Jessica W.

{¶2} Paul married Jessica in 2006. They had a child, J.F.R-W, in 2008. Paul and Jessica's marriage eventually ended in divorce. As part of the divorce, Jessica was granted custody of J.F.R-W, and Paul was to have visitation.

{¶3} Over time, contact between Paul and the child declined until Paul finally texted Jessica's phone to wish the child a happy birthday on January 10, 2015, his last contact.

{¶4} Jessica eventually married Heath, who filed a petition to adopt the child on May 24, 2016. Paul refused to consent to the adoption. So the Belmont County Probate Court held a hearing to determine whether or not the adoption could proceed.

{¶5} After the hearing, the court found that Paul had failed without justifiable cause to provide more than *de minimis* contact with the child over the year preceding the petition. Therefore the court granted the adoption without Paul's consent. Paul timely filed a notice of appeal on September 14, 2016.

{¶6} Paul's sole assignment of error states:

THE PROBATE COURT COMMITTED REVERSIBLE ERROR WHEN IT HELD THAT APPELLANT, PAUL [B.]'S, CONSENT WAS NOT NECESSARY IN THE ADOPTION OF HIS MINOR CHILD BECAUSE HE FAILED TO MAINTAIN MORE THAN DE MINIMIS CONTACT WITHOUT JUSTIFICATION.

{¶7} Paul focuses on the without-justifiable-cause element and argues that competent and credible evidence supports the position that Jessica's interference justified his lack of contact with the child.

{¶8} He quotes the Ohio Supreme Court for the proposition that significant interference by a custodial parent justifies the other parent's failure to make contact

with the child. *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 367–368, 481 N.E.2d 613 (1985).

**{¶9}** Paul then highlights portions of the record, which, he argues, show significant interference by Jessica justifying his lack of contact.

**{¶10}** Paul refers to her: failing to encourage visitation; ignoring his calls and texts; changing the child's residence without telling him; blocking him on social media; quickly leaving when she and the child encountered him in a parking lot; failing to recall having missed his calls, despite phone records; calling an adoption lawyer two days after Paul raised the subject of visitation at a support hearing; and, finally, having Paul served by publication for the child's name change, and then by mail at his mother's for the adoption; and then giving conflicting answers about whether or not she knew that Paul's mother actually lived at that address.

**{¶11}** Paul concludes his argument by asserting that the foregoing represents competent and credible evidence in support of the contention that Jessica's interference justified his lack of contact. Accordingly, Paul seeks for this Court to reverse the probate court's judgment and find that his consent is required.

**{¶12}** The right of natural parents to the care and custody of their child is one of the most precious and fundamental rights in law—far more precious than property rights. *In re Adoption of Geis*, 7th Dist. No. 05HA574, 2005-Ohio-4378, ¶ 8, citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re Adoption of Masa*, 23 Ohio St.3d 163, 165, 492 N.E.2d 140 (1986); *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45, 54 (6th Dist.1991).

**{¶13}** Severing the parent-child relationship has been described as the family-law equivalent of the "'death penalty'". *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997), quoting *In re Smith*, 77 Ohio App.3d 1, 14, 601 N.E.2d 45, 54 (6th Dist.1991)*.* Therefore, any exception to the parental-consent requirement must be strictly construed to protect this precious and fundamental right. *Masa* at 164, quoting *In re Schoeppner's Adoption*, 46 Ohio St.2d 21, 24, 345 N.E.2d 608 (1976).

**{¶14}** Adopting a child generally requires written consent from the parents.

R.C. 3107.06. However, a petitioner may avoid the consent requirement by demonstrating that: (1) the parent failed to provide more than *de minimis* contact in the year preceding the petition, and (2) the parent's failure was unjustified. R.C. 3107.07(A).

{¶15} To prevail, the petitioner must demonstrate both elements by clear and convincing evidence. R.C. 3107.07(A).

{¶16} Clear and convincing evidence is

> [t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal.

*In re Estate of Haynes*, 25 Ohio St.3d 101, 104, 495 N.E.2d 23 (1986).

{¶17} Procedurally, if the petitioner proves that the parent failed to provide more than *de minimis* contact, then the parent gets the opportunity to offer justification. R.C. 3107.07(A). To put it another way, just as the failure to provide more than *de minimis* contact removes the consent requirement; "justifiable cause" restores it. R.C. 3107.07(A).

{¶18} And, unlike the clear-and-convincing burden that petitioners' bear, natural parents need only show some facially justifiable cause for their failure. *Geis*, 2005-Ohio-4378 at ¶ 12.

{¶19} Nevertheless, whether or not the parent presents a facially justifiable cause, the clear-and-convincing-evidence burden remains with the petitioner. *In re Adoption of Bovett*, 33 Ohio St.3d 102, 515 N.E.2d 919, syllabus (1987); *Dallas v. Dotson*, 113 Ohio App.3d 484, 487, 681 N.E.2d 464 (9th Dist.1996), appeal not allowed 77 Ohio St.3d 1515, 674 N.E.2d 370. Because, regardless of the parent's given justification, the petitioner ultimately has the burden to prove, by clear-and-convincing evidence, that the lack of more than *de minimis* contact was, in fact, not

justified. R.C. 3107.07(A), *Geis*, 2005-Ohio-4378 at ¶ 13.

**{¶20}** Here, the probate court conducted the hearing. Consequently, this Court will defer to the probate court in its determinations of witness credibility. *Geis*, 2005-Ohio-4378 at ¶ 15, citing *Myers v. Garson*, 66 Ohio St.3d 610, 615, 614 N.E.2d 742 (1993).

**{¶21}** Moreover, the probate court's decision will not be disturbed unless it is against the manifest weight of the evidence. *Geis*, 2005-Ohio-4378 at ¶ 14. In other words, this Court will reverse only when:

> [the decision] is so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice.

*Machuga v. Coca-Cola Bottling Co. of Youngstown*, 78 Ohio Law Abs. 579, 153 N.E.2d 713, 715 (7th Dist.1957), quoting 3 Ohio Jurisprudence 2d, section 819.

**{¶22}** To review, the probate court found that Paul had failed, without justifiable cause, to provide more than *de minimis* contact with the child for the statutory period. Since Paul never disputed the lack of contact, our analysis will be confined to the justifiable-cause element. Thus, the question on appeal is whether the probate court's decision—that Paul's failure to provide more than *de minimis* contact was unjustified—was against the manifest weight of the evidence. Addressing that question requires a thorough review of the record.

**{¶23}** Paul married Jessica in Florida in 2006. After Paul's naval service, they moved to Shadyside, Ohio, in 2007. (Tr. 50). In January 2008, Paul and Jessica had a child, J.F.R-W. In that same year, Jessica began a relationship with her future-husband, Heath. (Tr. 20).

**{¶24}** Also around that time, Paul assaulted Jessica's father. (Tr. 17). Paul and Jessica divorced in 2009. (Tr. 28). Jessica became the child's residential parent, while Paul had visitation. (Tr. 28).

**{¶25}** Paul testified he wishes to be a part of the child's life. (Tr. 35). However,

Paul described his and Jessica's attempts to work out visitation as "rough". (Tr. 28). At one point, Paul filed a contempt motion. (Tr. 26). To resolve it, in April 2010, the parties agreed to supervised visitation. (Tr. 26–27).

{¶26} Jessica testified that she tried to keep Paul involved in the child's life. (Tr. 19). In particular, Jessica said that she transported the child to all of the visitations before and after the 2010 contempt episode. (Tr. 19).

{¶27} According to Paul, the last time he and the child had a visitation was on Thanksgiving 2012. (Tr. 29). How long that visit lasted is unclear from the record. The next day Paul went to Missouri, where he got into trouble and was incarcerated for three months. (Tr. 29). He said he sent a letter to Jessica apologizing and informing her he would not be there for Christmas. (Tr. 29). She did not reply. (Tr. 29).

{¶28} Paul further testified that after he returned, in February of 2013, he tried to contact Jessica's cell phone. (Tr. 30). Paul said that he did not always have his own phone, so he tried calling from various numbers. (Tr. 30, 34). He testified that he tried calling her roughly two times per week. (Tr. 33). He tried sending her text messages too, he said. (Tr. 34). However, according to his testimony, he received no reply. (Tr. 29).

{¶29} According to Jessica, following the Thanksgiving visit, she received a call from Paul in October of 2013 regarding the child's name change. (Tr. 18). Jessica testified that, after the 2013 call, Paul made no contact with the child over the next approximately 15 months, not until he sent the 2015 birthday text. (Tr. 18). She added that, since the Thanksgiving visitation, Paul had not asked to see the child. (Tr. 6).

{¶30} When attempting to reach Jessica, Paul admitted that he never left a voicemail. (Tr. 34). He explained that he does not leave voicemail unless the situation is dire. (Tr. 34).

{¶31} According to Paul, he did not know where Jessica lived. (Tr. 29). Paul testified that he knocked on the door of an unoccupied dwelling Jessica owns in Shadyside, but no one answered. (Tr. 16, 29).

**{¶32}** Meanwhile, Jessica applied to have the child's name changed. (Tr. 9). For that, she apparently served Paul with notice via publication. (Tr. 9). The Belmont County Probate Court permitted the child's last name to be changed to Jessica's family name in April 2013. After that, through mutual acquaintances, Paul discovered what happened, and, in October 2013, he talked to Jessica by phone, telling her that he would contest the name change. (Tr. 18, 34).

**{¶33}** In November 2013, Jessica, the child, and Heath moved into a house together in St. Clairsville. (Tr. 8–9, 20, 29). They did not inform Paul. (Tr. 8).

**{¶34}** Paul's friend testified that he and Paul coincidentally encountered Jessica and the child in a parking lot outside of the child's daycare in September 2014. (Tr. 52). Jessica and the child left without stopping to interact, Paul's friend stated. (Tr. 53).

**{¶35}** Finally, Paul texted Jessica's phone to wish the child a happy birthday on January 10, 2015, which was his last contact before the adoption petition, which Heath filed May 24, 2016. (Tr. 5).

**{¶36}** Jessica and Heath married in July 2015. (Tr. 20).

**{¶37}** Paul testified that he had had issues with paying child support, resulting in a hearing at divorce court on May 9, 2016. (Tr. 19, 31, 44). Later, at the time of the probate hearing, the parties stipulated that, regarding child support, Paul was "fairly current with a very low arrearage". (Tr. 45). Nevertheless, in the hallway outside of divorce court, the parties exchanged words, with Paul apparently expressing discontent over not seeing the child. (Tr. 11, 30–32, 44, 50–52).

**{¶38}** Paul testified that, in the one year preceding the petition, he had made several attempts to contact Jessica regarding visiting the child, including via his cellphone and friends' cellphones. (Tr. 30). Paul presented phone records to bolster this claim. (Respondents Ex. 1; Tr. 14–16). Jessica testified she did not recall those missing calls. (Tr. 15–16).

**{¶39}** In addition, Paul said that he had searched the internet for Jessica's address but was unsuccessful. (Tr. 37).

**{¶40}** Having personally heard the testimony, the probate court made determinations about credibility. In part based on those determinations, the probate court found that Paul had failed, without justifiable cause, to provide more than *de minimis* contact, in the year preceding the petition. Paul asserts the court erred. We disagree.

**{¶41}** Under the statute, if Paul had "justifiable cause" for not providing the requisite contact, then he could prevent the adoption from occurring. R.C. 3107.07.

**{¶42}** "Justifiable cause" is a term of imprecise meaning. *In re Adoption of Holcomb*, 18 Ohio St.3d at 367. The Ohio Supreme Court, in fact, has declined to adopt any precise or inflexible definition for "justifiable cause". *Id*. Consequently, it has been defined in various ways by various courts. *Id*.

**{¶43}** In this case, Paul argues that Jessica's substantial interference justified his lack of contact. Substantial interference represents one common form of "justifiable cause". *See In re Adoption of Holcomb* at 367–368. In particular, "substantial interference" occurs:

> Where a custodial parent has, through her own substantial efforts, deprived the non-custodial parent of the opportunity of enjoying a meaningful relationship with his child and further has actively interfered with his attempts, however meager, to provide support and maintenance to the child

*Matter of Adoption of Hupp*, 9 Ohio App.3d 128, 131, 458 N.E.2d 878 (8th Dist.1982), citing *In re Lindley*, 8th Dist. No. 40333, 1980 WL 354495, *6.

**{¶44}** Here, Jessica did change the child's residence without informing Paul. *See In Matter of Adoption of Shea*, 10th Dist. No. 90AP-245, 1990 WL 106468 (affirming a probate courts finding of justifiable cause where, *inter alia*, the mother moved several times without giving notice). Not knowing the custodial parent's address certainly represents a challenge. However, according to the record, Paul knew where Jessica's parents lived. He knew where she worked. And he knew where

the child's daycare was. Consequently, Jessica cannot be said to have deprived Paul of the opportunity to have contact with the child because Paul had other reasonable options available other than using Jessica's address.

**{¶45}** In addition, the record of Paul's inaction weighs in favor of affirming the probate court's decision. Paul did not file a contempt motion against Jessica over visitation. And when Paul spoke with Jessica on the phone about the name change in October 2013 he could have pursued contact then, but didn't. He never pursued contact at addresses he was aware of. Finally, Paul himself spoke to his own lack of justifiable cause when he testified why he never left a voicemail for the child. He did not think it was dire. Accordingly, the record shows that Paul failed to demonstrate justifiable cause.

**{¶46}** Upon a thorough review of the record, we find that the trial court's decision was not against the manifest weight of the evidence. Accordingly, appellant's assignment of error is without merit and is overruled.

**{¶47}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, J., concurs.

Robb, P.J., concurs.