[Cite as *In re Adoption of M.J.A.*, 2022-Ohio-3275.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| IN RE: | : | |
|    THE ADOPTION OF M.J.A. | : | CASE NO. CA2022-05-051 |
| | : | O P I N I O N<br>9/19/2022 |
| | : | |
| | : | |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case No. PA21-03-0019

Herdman, Summers, Revelson & Cesta, and Joseph A. Cesta, for appellants.

Lampe Law Office, and Patricia J. Downing, for appellee.

**S. POWELL, P.J.**

{¶ 1} Appellants, D.A. and S.A., the would be adoptive parents of M.J.A., appeal the decision of the Butler County Court of Common Pleas, Probate Division, granting the Civ.R. 60(B) motion to vacate filed by M.J.A.'s biological mother, appellee, H.B. For the reasons outlined below, we affirm the probate court's decision.

**The Parties**

{¶ 2} The child at issue in this case, M.J.A., a boy, was born in Fairfield, Butler County, Ohio on February 18, 2016. M.J.A.'s would-be adoptive parents, D.A. and S.A., are M.J.A.'s paternal great aunt and uncle who live in West Chester, Butler County, Ohio. There is no dispute that D.A., who is a sales representative for a local engineering firm, and S.A., who is a registered medical assistant, were awarded legal custody of M.J.A. in the fall of 2019. There is also no dispute that M.J.A.'s biological father, R.M., consented to D.A. and S.A. adopting M.J.A. during the underlying adoption proceedings giving rise to this appeal. R.M., however, is not a party to this appeal.

**Facts and Procedural History**

{¶ 3} On March 19, 2021, D.A. and S.A. filed a petition for adoption of M.J.A. In their petition, D.A. and S.A. alleged that H.B.'s consent to M.J.A.'s adoption was unnecessary. To support this contention, D.A. and S.A. cited to R.C. 3107.07(A). Pursuant to that statute, the consent of a natural parent to the adoption of his or her child is not required under certain circumstances. Specifically, under R.C. 3107.07(A), consent to an adoption is not required of:

> A parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

{¶ 4} On May 25, 2021, the probate court filed a notice that a hearing on D.A.'s and S.A.'s petition for adoption of M.J.A. was to take place on June 17, 2021. This notice was given by the probate court pursuant to R.C. 3107.11(A), which provides, in pertinent part, the following:

(A) After the filing of a petition to adopt an adult or a minor, the court shall fix a time and place for hearing the petition. * * * At least twenty days before the date of hearing, notice of the filing of the petition and of the time and place of hearing shall be given by the court to all of the following:

> (1) Any juvenile court, agency, or person whose consent to the adoption is required by this chapter but who has not consented;

> (2) A person whose consent is not required as provided by division (A) * * * of section 3107.07 of the Revised Code and has not consented; * * *.

{¶ 5} After the probate court's notice was filed, the notice was then sent by certified mail, return receipt requested, to H.B.'s home address located in West Chester, Butler County, Ohio. An electronic return receipt was filed with the probate court on June 9, 2021 indicating delivery of the probate court's notice was completed on June 1, 2021, 16 days prior to the hearing on D.A.'s and S.A.'s petition for adoption was to take place. The signature box included on the return receipt filed with the probate court contained a squiggly line directly above a "C-19" notation. The record indicates that a "C-19" notation was shorthand used by some mail carriers during the Covid-19 pandemic in response to the United States Postal Service's temporary modification to its certified mail procedures.[1]

{¶ 6} On June 17, 2021, the probate court held the previously scheduled hearing on D.A.'s and S.A.'s petition for adoption. H.B. did not appear at this hearing. When H.B. failed to appear, the probate court issued a decision finding H.B.'s consent to M.J.A.'s adoption was unnecessary under R.C. 3107.07(A). After making this finding, the probate

---

1. Explaining what this temporary modification entailed, the United States District Court for the Southern District of Ohio stated that, "[r]ather than force the face-to-face interaction that a signature requirement would otherwise entail, the [United States Postal Service] instructed its delivery personnel to ensure that someone was at the address to receive the letter, to ask that person for their name, and to then leave the letter where the person could get it. The mail carrier then fills out the return receipt." *Finnell v. Eppens*, S.D.Ohio No. 1:20-CV-337, 21 U.S. Dist. LEXIS 110389, *6-*7 (June 4, 2021). This could be reflected by notations of "Covid," "Covid-19," or similar notations consistent with the United States Postal Service's temporary modification. *Id.* at *14.

court then issued a final decree of adoption granting D.A.'s and S.A.'s petition for adoption of M.J.A.

{¶ 7} On November 15, 2021, H.B. filed a Civ.R. 60(B) motion to vacate the probate court's adoption decree pertaining to her son. To support her motion, H.B. argued that vacating the adoption decree was necessary because she had not received any notice, either from the probate court or D.A.'s and S.A.'s counsel, that a hearing on D.A.'s and S.A.'s petition for adoption of M.J.A. was to take place on June 17, 2021, "and accordingly, has never had the opportunity to be heard on the issue of adoption of her minor son."

{¶ 8} On April 14, 2022, the probate court held a hearing on H.B.'s motion to vacate. During this hearing, the probate court heard testimony from two witnesses. One of these two witnesses was H.B. As part of her testimony, H.B. testified that she had never received anything from the probate court notifying her that D.A. and S.A. had initiated adoption proceedings for M.J.A. H.B. testified that the same was true as it related to D.A.'s and S.A.'s counsel. H.B. further testified "No, Ma'am," when asked if she had ever received "notice of a Court date in June of 2021 regarding the adoption of [M.J.A.]." This was in addition to H.B. testifying "No, Ma'am," when asked if she had any knowledge, either direct or indirect, "or through the mail," that D.A. and S.A. had filed a petition to adopt M.J.A.

{¶ 9} Shortly after this hearing concluded, the probate court issued a decision granting the Civ.R. 60(B) motion to vacate filed by H.B. in this case. In so holding, the probate court initially found:

> [H.B.] falls within the class of persons entitled to notice * * * , which R.C. Section 3107.11(A) requires to be served by the Court "at least twenty days before the hearing." While the notice purported to be served [on H.B.] was Standard Probate Form 18.2, and thus in compliance with statutory form, the service was ostensibly made by certified mail on June 1, 2021, or only 16 days in advance of the adoption hearing. The Court believes that the 20-day notice requirement is mandatory as evidenced by the statutory language "shall be served," and [D.A. and S.A.

have] advance[d] no contrary argument.

(Bold text deleted.)

{¶ 10} The probate court also found that, even if it had the discretion to dispense with the "20-day time requirement" found in R.C. 3107.11(A), the probate court would still be "compelled to set aside the decree for failure of proper certified mail service." Explaining why that was, the probate court stated, in pertinent part, the following:

> The electronic return receipt indicates delivery as addressed on June 1, 2021. However, the signature box appears to contain the notation "C-19" rather than the signature of [H.B.] or member of [H.B.'s] household. * * * Civ.R. 4.1(A)(1)(a) mandates that certified mail service be "evidenced by return receipt signed by any person." * * * [W]e agree with other courts that have considered the issue that "any person" refers to any person receiving the notice at the address of delivery, but does not include the letter carrier. In the absence of evidence to the contrary, the Court takes the notation "C-19" on the return receipt to be that of the letter carrier, and thus not in compliance with the rule.

(Internal citations, bold, and italicized text deleted.)

### D.A.'s and S.A.'s Appeal and Three Assignments of Error

{¶ 11} On May 16, 2022, D.A. and S.A. filed a timely notice of appeal from the probate court's decision. Their appeal now properly before this court for decision, D.A. and S.A. have raised three assignments of error for review. In their three assignments of error, D.A. and S.A. argue the probate court erred by granting the Civ.R. 60(B) motion to vacate filed by H.B. in this case. Given the record properly before this court, which includes a transcript of H.B.'s testimony elicited at the probate court's April 14, 2022 hearing set forth above, we disagree with D.A.'s and S.A.'s argument and instead affirm the probate court's decision in its entirety.

### Civ.R. 60(B) Standard of Review

{¶ 12} "'Civ.R. 60(B) provides the exclusive grounds which must be present and the

procedure which must be followed in order for a court to vacate its own judgment.'" *Morrison v. Liberty Mut. Ins. Co.*, 12th Dist. Butler No. CA2021-12-163, 2022-Ohio-2458, ¶ 19, quoting *Combs v. Children's Med. Ctr.*, 12th Dist. Butler No. CA95-12-217, 1996 Ohio App. LEXIS 3229, *9-*10 (July 29, 1996). To prevail on a Civ.R. 60(B) motion, the moving party must demonstrate that (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B); and, (3) the motion is made within a reasonable time. *Reynolds v. Turull*, 12th Dist. Butler No. CA2018-10-197, 2019-Ohio-2863, ¶ 9, citing *GTE Automatic Electric, Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146 (1976), paragraph two of the syllabus. "A failure to establish any one of these three requirements will cause the motion to be overruled." *Wash. Mut. Bank, F.A. v. Christy*, 12th Dist. Butler No. CA2003-03-075, 2004-Ohio-92, ¶ 8, citing *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 20 (1988).

{¶ 13} "The policy in Ohio is to afford Civ.R. 60(B) relief where equitable." *Robinson v. Miller Hamilton Venture, L.L.C.*, 12th Dist. Butler No. CA2010-09-226, 2011-Ohio-3017, ¶ 14, citing *Southern Ohio Coal Co. v. Kidney*, 100 Ohio App.3d 661, 668 (4th Dist.1995). This is evidenced by the language found in Civ.R. 60(B)(5). Pursuant to that rule, "[o]n motion and upon such terms as are just," a court may relieve a party from a final judgment, order or proceeding for "any other reason justifying relief" not already set forth within Civ.R. 60(B)(1), (2), (3), or (4). *See Myers v. Lawson*, 12th Dist. Warren No. CA2012-07-068, 2013-Ohio-2500, ¶ 15 ("Civ.R. 60[B][5] should not be used as a substitute for any of the other more specific provisions of Civ.R. 60[B]"). The language found in Civ.R. 60(B)(5) serves as a "catch-all provision" that reflects "the inherent power of a court to relieve a party from the unjust operation of a judgment." *Aurora Loan Servs. v. Brown*, 12th Dist. Warren Nos. CA2010-01-010 and CA2010-05-041, 2010-Ohio-5426, ¶ 39, citing *Caruso-Ciresi, Inc. v. Lohman*, 5 Ohio St.3d 64 (1983), paragraph one of the syllabus.

{¶ 14} This court will not reverse a court's decision to grant a Civ.R. 60(B) motion absent an abuse of discretion. *Reynolds v. Turull*, 12th Dist. Butler No. CA2018-10-197, 2019-Ohio-2863, ¶ 10. "An abuse of discretion connotes more than an error of law or judgment; it implies the trial court acted unreasonably, arbitrarily, or unconscionably." *Middletown App., Ltd. v. Singer*, 12th Dist. Butler Nos. CA2018-08-165 and CA2018-11-224, 2019-Ohio-2378, ¶ 12, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "'[T]he vast majority of cases in which an abuse of discretion is asserted involve claims that the decision is unreasonable.'" *Southwestern Ohio Basketball, Inc. v. Himes*, 12th Dist. Warren No. CA2020-08-045, 2021-Ohio-415, ¶ 34, quoting *Effective Shareholder Solutions v. Natl. City Bank*, 1st Dist. Hamilton Nos. C-080451 and C-090117, 2009-Ohio-6200, ¶ 9. "A decision is unreasonable where it is not supported by a sound reasoning process." *Nationwide Agribusiness Ins. Co. v. Heidler*, 12th Dist. Clinton Nos. CA2018-06-003, CA2018-07-004, CA2018-09-012, and CA2018-09-015, 2019-Ohio-4311, ¶ 46.

**Analysis**

{¶ 15} The probate court initially determined that vacating its adoption decree pertaining to M.J.A. was necessary because the notice it sent to H.B. notifying her of the hearing on D.A.'s and S.A.'s petition for adoption was not served on H.B. at least 20 days prior to that hearing taking place as required by R.C. 3107.11(A). After a thorough review of the record, we find no error in the probate court's decision. *See, e.g., In re Adoption of R.M.T.*, 12th Dist. Warren Nos. CA2017-12-177 and CA2017-12-178, 2018-Ohio-1691, ¶ 23-27 (vacating a final decree of adoption where a probate court did not provide a father with at least 20-days' advance notice as required by R.C. 3107.11[A]). This holds true even if D.A.'s and S.A.'s counsel had, in fact, notified H.B. of that hearing more than 20 days before the hearing took place. This is because, as the language found in R.C. 3107.11(A) plainly states, "notice of the filing of the petition and of the time and place of hearing *shall*

*be given by the court*." (Emphasis added.) That R.C. 3107.11(C) calls for "[a]ll notices required under this section" be given as specified in the Rules of Civil Procedure does not change this fact. The word "shall" means "must," and the word "must" is mandatory. *In re K.D.*, 12th Dist. Clermont No. CA2020-11-063, 2021-Ohio-1538, ¶ 6. D.A.'s and S.A.'s claim otherwise lacks merit.

{¶ 16} The probate court also determined that, even when assuming the timing requirement set forth in R.C. 3107.11(A) had been satisfied, vacating its adoption decree pertaining to M.J.A. was necessary because the notice it sent to H.B. was not received by H.B. or a member of H.B.'s household. The probate court instead found the notice was received by the mail carrier who was tasked with delivering the notice to H.B.'s home address. The probate court reached this decision based on the "C-19" notation found on the return receipt filed with the court on June 9, 2021. We find no error in the probate court's decision. This is because, pursuant to Civ.R. 4.1(A)(1)(a), service by certified mail must be "[e]videnced by return receipt signed by any person" who received the certified mailing— not the one who delivered it. *Cuc Props. VI, LLC v. Smartlink Ventures, Inc.*, 1st Dist. Hamilton No. C-210003, 2021-Ohio-3428, ¶ 10 ("Civ.R. 4 directs the postal employee to identify the person at the address who received the certified mail—not the one who delivered it").

{¶ 17} Our respected colleague concurs in this holding noting his belief that, based on the wording of the rule as it now stands, an interesting question regarding whether the reference to "any person" in Civ.R. 4.1(A)(1)(a) excludes the person who delivers the certified mailing. However, in our reading of the rule, we do not believe such a question exists. The last sentence is just as significant as the first. The last sentence directs the "delivering postal employee" to identify the person at the address "to whom [the certified mailing was] delivered," i.e., the recipient who received the certified mail, not the one who

delivered it. Thus, when taken in its entirety, we believe Civ.R. 4.1(A)(1)(a) has already answered the question of whether the reference to "any person" in the first sentence of the rule excludes the person who delivers the certified mailing. Nevertheless, given that such dispute exists between the three judges sitting on this panel, we believe it fitting for the language found in Civ.R. 4.1(A)(1)(a) be reviewed and amended to clarify whether the reference to "any person" does, or does not, exclude the person who delivers the certified mailing.

{¶ 18} That said, while our colleague does not join us in deciding the question of whether the reference to "any person" in Civ.R. 4.1(A)(1)(a) excludes the person who delivers the certified mailing, we all agree that, absent additional evidence to prove that service was proper, a mail carrier's "C19" or "C-19" notation on a return receipt does not constitute a "signature" or a receipt "signed" by a person as required by Civ.R. 4.1(A)(1)(a). *See, e.g., Copeland v. IRS,* N.D.Texas No. 3:20-CV-3288-L-BH, 2021 U.S. Dist. LEXIS 160862, *16 (Aug. 4, 2021) (finding return receipt with "C19" notation written on the signature line was insufficient proof of service where the return receipt did not identify the recipient's name); and *Macias v. Grange Ins. Co.,* W.D.La. No. 2:20-CV-00170, 2020 U.S. Dist. LEXIS 151780, *6 (Aug. 20, 2020) (finding a certified mail return receipt with "C19" written in the signature block was sufficient proof of service where additional evidence was presented indicating that piece of mail was delivered to the recipient). The same is true as it relates to a mail carrier's "Covid" or "Covid 19" notation. *See, e.g., Cunningham v. Matrix Fin. Servs,* C.D.Cal. No. 8:20-mc-00065-CJC-JDE, 2021 U.S. Dist. LEXIS 62513, *10-*11 (Feb. 4, 2021) (finding a return receipt with "COVID 19" written in the signature block was insufficient proof of service); *First Acceptance Ins. Co. v. Rosser*, S.D.Ala. No. 2:20CV-554-TFM-C, 2021 U.S. Dist. LEXIS 95631, *8-9 (May 19, 2021) (finding insufficient proof of service absent "additional evidence to prove that service was proper" where return receipt

stated only "Covid 19").

{¶ 19} In so holding, we note that D.A. and S.A. argue this case is directly analogous to the Second District Court of Appeal's decision in *Cincinnati Ins. Co. v. Hall*, 2d Dist. Montgomery No. 29288, 2022-Ohio-1112. In that case, the Second District determined that, although a "C 19" notation was included on the electronic return receipts at issue, there was nevertheless "no basis for concluding that the person who signed the return receipt was the mail carrier" given that both "proof-of-delivery letters" contained in the record included dates of delivery, a "status" line that read, "Delivered, Left with Individual," and "scanned signature and address box[es]" that were completed, albeit with "largely illegible writing." *Id.* at ¶ 19, 21, and 24. Based on these facts, the Second District determined that, "[a]bsent a stipulation from [appellant] or other evidence establishing that that a mail carrier in fact signed the return receipts, they are at least minimally sufficient, on their face, to create a rebuttable presumption of valid service." *Id.* at ¶ 22. This was because, as the Second District later explained, "the return receipts before us do appear to contain an authenticating signature, mark, or writing from someone." *Id.* at ¶ 24.

{¶ 20} Admittedly, the facts in this case are somewhat similar to the facts faced by the Second District in *Cincinnati Ins.* However, despite D.A.'s and S.A.'s claim that the two cases are directly analogous to one another, we instead find the Second District's decision in *Cincinnati Inc.* to be distinguishable from the case at bar. This is because, unlike in *Cincinnati Ins.*, H.B.'s testimony, if believed, provided the probate court with more than enough evidence to conclude the "C-19" notation contained on the return receipt filed with the probate court, as well as the squiggly line directly above that notation, were both markings that were made by the mail carrier. This includes, as noted above, H.B. specifically testifying that she had never received anything from the probate court notifying her that D.A. and S.A. had initiated adoption proceedings for M.J.A. H.B. testified that the

same was true as it related to D.A.'s and S.A.'s counsel. H.B. also testified "No, Ma'am," when asked if she had ever received "notice of a Court date in June of 2021 regarding the adoption of [M.J.A.]." This was in addition to H.B. testifying "No, Ma'am," when asked if she had any knowledge, either direct or indirect, "or through the mail," that D.A. and S.A. had filed a petition to adopt M.J.A.

{¶ 21} Given the probate court's decision in this matter, it is clear the probate court found H.B.'s testimony credible. "The probate court is in the best position to observe the demeanor of the parties, to assess their credibility, and to determine the accuracy of their testimony." *In re Adoption of A.L.E.*, 4th Dist. Meigs No. 16CA10, 2017-Ohio-256, ¶ 23. Because of this, we defer to the probate court in its determination of witness credibility. *In re Adoption of J.F.R.-W.*, 7th Dist. Belmont No. 16 BE 0045, 2017-Ohio-1265, ¶ 20. This holds true even though the probate court did not make an explicit determination regarding H.B.'s credibility within its decision. *See T.M. v. R.H.*, 9th Dist. Summit No. 29556, 2020-Ohio-3013, ¶ 39 ("Although the magistrate did not make an explicit determination regarding the credibility of the witnesses in this case, it is evident from the magistrate's denial of T.M.'s petition for a DVCPO, that the magistrate did not find her assertion that R.H. committed an act of domestic violence against her to be credible."). D.A.'s and S.A.'s claim otherwise again lacks merit.

{¶ 22} The Covid-19 pandemic demanded innovation and flexibility, something that courts throughout this state exhibited in keeping the courthouse doors open. However, despite the challenges that arose during the Covid-19 pandemic, this does not mean the due process protections afforded to a natural parent whose child is the subject of adoption proceedings should be dispensed with for the sake of finality and judicial expediency. This is particularly true here when considering the record contains little, if any, credible evidence indicating the probate court's notice it sent to H.B. at her home address was ever actually

received by H.B. or a member of H.B.'s household. The record instead indicates that the mail carrier, by making a "C-19" notation on the return receipt filed with the probate court, assumed the role of both the deliverer and the recipient of the probate court's notice sent to H.B. Such a notification, as noted above, does not constitute a "signature" or a receipt "signed" by a person as required by Civ.R. 4.1(A)(1)(a). *See Cuc Props VI*, 2021-Ohio-3428 at ¶ 10 ("No matter how creatively we construe 'Covid 19' or 'C19,' those notations do not comport with any common understanding of 'signed' or 'signature.'")

## Conclusion

{¶ 23} For the reasons outlined above, and finding no merit to any of the arguments advanced by D.A. and S.A. herein in support of their assignments of error, D.A.'s and S.A.'s three assignments of error lack merit and are overruled. Therefore, finding no merit to any of D.A.'s and S.A.'s arguments raised herein, the probate court's decision granting the Civ.R. 60(B) motion to vacate filed by H.B. in this case is affirmed.

{¶ 24} Judgment affirmed.

HENDRICKSON, J., concurs.

BYRNE, J., concurs separately.


**BYRNE, J., concurring separately.**

{¶ 25} I agree with and join the majority's decision in all respects except one. The majority states that "pursuant to Civ.R. 4.1(A)(1)(a), service by certified mail must be '[e]videnced by return receipt signed by any person' who received the certified mailing—not the one who delivered it." Opinion at ¶ 16. But the text of Civ.R. 4.1(A)(1)(a) only states that the return receipt must be "signed by any person," and does not add the qualifier "who received the certified mailing." Nor does Civ.R. 4.1(A)(1)(a) state that "any person"

excludes "the one who delivered" the certified mailing. There is thus an interesting question regarding whether the reference to "any person" in Civ.R. 4.1(A)(1)(a) excludes the person who delivers the certified mailing. However, because I think the majority is correct in finding that the return receipt was not "signed" by any person when a "C-19" notation was placed on the return receipt in lieu of a signature, I do not find it necessary to decide the question about the meaning of "any person" as used in Civ.R. 4.1(A)(1)(a).

{¶ 26} Like the majority, I suggest that an amendment to Civ.R. 4.1(A)(1)(a) to provide clarity on this question may be appropriate.

{¶ 27} I respectfully concur in the judgment.